IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

In re:

STEPHEN L. MAINOUS AND
RAEANNE E. MAINOUS,                                             Case No. 19-11630 -JCO

    Debtors.

## MEMORANDUM OPINION AND ORDER

This matter came before the Court for evidentiary hearing on the Motion for Relief from the Automatic Stay (hereinafter "the Motion") filed by U. S. Lawns, Inc. (hereinafter "USL") pursuant to 11 U.S.C. §362 as well as the Debtors' Objections to the Proof of Claims filed by USL.  Proper notice of hearing was given and appearances were noted by Attorney Bradford Dempsey on behalf of USL and Attorney Jennifer Holifield on behalf of the Debtors.  Having considered the court record, testimony,  pleadings, exhibits and arguments of counsel, the Court finds as follows:  (1) USL's Motion for Relief is due to be GRANTED as to SRM Landscape Maintenance, LLC and Grassmaster's Landscape Management, LLC declaring the automatic stay inapplicable to those entities;  (2) USL's  Motion for Relief is due to be CONDITIONALLY GRANTED as to the Debtors, Steven L. and RaeAnne E. Mainous, limiting the relief sought to proceedings in  state or federal courts in the Southern District of Alabama; (3) the Debtors' Objection to  Claim 10 of  USL is due to be OVERRULED;  and  (4) the Debtors' Objection to Claim 9  is due to be OVERRULED IN PART, allowing USL an unsecured claim in the amount of  $27,770.06.

## JURISDICTION

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1334 and 157, and the order of reference of the District Court dated August 25, 2015. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) (A), (B) and (G).

## PROCEDURAL HISTORY AND FACTS

Steve and RaeAnne Mainous (the "Debtors") filed this Chapter 13 bankruptcy on May 15, 2019. On August 15, 2019, the Debtors filed objections to the claims of U.S. Lawns ("USL") (Doc. 37, 38) requesting disallowance of Claim Number 9 filed as unsecured in the amount of $35,532.10 and Claim Number 10 filed as secured in the amount of $6891.01. Thereafter, on August 26, 2019, USL filed a Motion for Relief from the Automatic Stay (Doc. 50) seeking permission to: (1) pursue preliminary and permanent injunctive relief and other equitable relief against the individual Debtors in Florida state or federal courts to prohibit the Debtors from providing landscape maintenance in the Mobile, Alabama territory and (2) declaring that SRM Landscape Maintenance, LLC and Grassmaster's Landscape Management, LLC are not entitled to protection of the automatic stay. The Debtors subsequently filed an Objection to USL's Motion for Relief (Doc. 73) and an Amended Objection to Claim. (Doc. 78). The matters were consolidated for hearing. At the time set for hearing, Debtors, by and through their counsel, withdrew their Objection to Claim 10, did not contest the amount of $9590.09 in Claim 9 and consented to relief from the automatic stay as to SRM Landscape Maintenance, LLC and Grassmaster's Landscape Management, LLC. Hence, the matters remaining for this Court to adjudicate were: (1) Debtors' objection to the contested portion of Claim 9 in the

2

amount of $25,942.01 (pertaining to royalty and marketing fund, penalties and interest) and (2) USL's Motion for Relief as to the individual Debtors.

At the hearing, Kenneth Hutcheson, President of USL, ("Hutcheson") testified that the company is a franchisor of landscape services. USL offered the Franchise Agreement ("Agreement") signed by the Debtors March 16, 2015, granting the Debtors a USL franchise in Mobile, Alabama. (Creditor's Ex. A, Doc. 93.) Hutcheson testified regarding the specifics of the Agreement, including requirements that Franchisees: (1) pay an initial franchise fee of thirty-two thousand dollars and 00/100ths ($32,000.00); (2) remit royalties on gross billings from 1.5% to 6%, with franchisees in the lowest category of gross monthly billings, such as the Debtors, paying the highest percentage on gross sales whether or not they are able to collect from customers and (3) make monthly marketing contributions. (Tr.25-26.)[1] Hutcheson further testified that the Agreement contains in term and post term non-compete provisions, waiver of the right to jury trial, requirements of mediation and binding arbitration and Florida choice of law and venue provisions. (Tr. 30-34.)

To obtain the Franchise, the Debtors paid ten thousand dollars and 00/100ths ($10,000.00) down and executed a note and security agreement in the amount of twenty-two thousand and 00/100ths ($22,000.00), of which it was undisputed that six-thousand, eight hundred and ninety-one dollars and 01/100ths ($6891.01) remained unpaid. (Tr. 13-15.) The Debtors also signed a Confidentiality and Non-Compete Agreement and Personal Guarantee in conjunction with the Franchise Agreement. (Tr. at 54.) Hutcheson testified that the Agreement contained an integration clause indicating in part that, "This agreement together with the addenda

---

[1] Transcript of hearing held October 9, 2019, ECF No.93.

and appendices . . . constitutes the entire agreement between the parties . . . " (Tr. at 38.) (citing Franchise Agreement, Creditor's Ex. A. at 29.) Hutcheson further testified with regard to Claim 9, that the franchisee payments stopped in May 2018 and some of the figures in the claim for royalties and marketing were estimated because the franchisee stopped reporting in November of 2018. (Tr. at 52.)

On cross examination, Hutcheson testified that none of the marketing fund has been allocated to Mobile, Alabama and there have not been any print, TV or other advertisements instituted by USL in the Mobile Territory. (Tr. at 61.) Hutcheson's testimony also confirmed that there was a prior USL franchise in the Mobile Territory that USL released from its franchise agreement and allowed to retain accounts. (Tr. at 65.)

The testimony of Mr. Mainous established that prior to their dealings with USL, the Debtors owned a successful lawn business in Vicksburg, Mississippi. (Tr. at 107.) Upon discussions with a USL recruiter, they were invited to a USL opportunity meeting wherein USL touted the benefits of a USL franchise and the Debtors were shown a "bullpen" of employees making calls pursuing USL customers and accounts for franchisees. (Tr. 111-117.) The Debtors understood that the benefits of a USL franchise included: strategic and regional accounts, networking, marketing, discounts on supplies, specialized training and support. (Tr. 111-112.) Thereafter, the Debtors were offered a USL franchise in Mobile, Alabama. In order to proceed with the USL franchise, Debtors sold their successful lawn business in Vicksburg to a USL franchisee and were required to sign a non-compete in conjunction therewith. (Tr. 118-119.) Upon selling their home and business and relocating to Mobile, the Debtors quickly learned of customer dissatisfaction with the prior USL franchisee, that the prior franchise was continuing to display the USL logo and continuing to perform work in the Mobile Territory and that USL did

4

not have any existing regional or strategic accounts in the Mobile Territory. (Tr. 113-116.) Mr. Mainous testified that USL did not provide him with any accounts, customers or marketing, USL forms and systems did not offer him anything unique or advantageous and the franchisee "ended up with not one customer, . . . not one account and nothing" from USL. (Tr. at 114 and 117.) The Debtor testified when they expressed their dissatisfaction and difficulties to USL they were just told to "keep selling" and stick with it. (Tr. at 122.) As a result, the Debtors struggled, exhausted their savings, sold personal property and even had their vehicle repossessed as they worked to obtain customers; however, they found their USL franchise to be a hindrance in competitively pricing services due to the mark up needed to cover royalties and marketing fees required to be paid to USL on gross receipts. (Tr. 123-125.)

Subsequent to obtaining the franchise, on or about April 27, 2015, the Mainouses, assigned and transferred all their right, title, interest, authority and privileges in, to and under the USL Franchise Agreement to SRM Landscape Maintenance, LLC ("SRM"). (Tr. 41-42; Ex. B.) SRM assumed and agreed to perform the obligations of the owner under the Franchise Agreement and USL consented to the Assignment. (*Id*.) Paragraph 10.D.4. of the Agreement regarding the covenant not to compete in the event of transfer of the franchise, provides in part:

> You and your owner must execute a non-competition covenant in favor of us and the assignee, agreeing for a period of not less than two years, commencing on the effective date of the assignment, you and your owner will not, directly or indirectly, within the Territory, solicit any person or Business Entity who is a customer of the Business at the time of the assignment, or offer, sell, or perform any Landscape Maintenance Services which are the same as or similar to those offered, sold or rendered by the U.S. Lawns business pursuant to this Agreement (except pursuant to other franchise agreements entered into with us) to any person or business entity which was at any time within 24 months immediately preceding the effective date of the assignment a customer of yours or of the U.S. Lawns Landscape Maintenance Business.

(Creditor's Ex. A.)

5

After the hearing was concluded, the Movant filed a Motion for Leave to File and Supplement the Record (Doc. 85), which was granted, to include information pertaining to the Civil Complaint filed on October 9, 2019 in the Circuit Court of Mobile County by Steven and RaeAnne Mainous, SRM and Grassmaster's against USL. The Complaint consisted of one count seeking declaratory judgment asking the state court to determine the respective rights and obligations of the parties under the Franchise Agreement and the validity of the non-compete covenants.

## ISSUES

The issues before the court are: (1) Whether cause exists to lift the automatic stay imposed by §362 to allow a franchisor to seek injunctive relief against the individual Debtors and (2) Whether the remaining portion of Claim 9 that is in controversy is due to be allowed.

## CONCLUSIONS OF LAW

### Issue I: Does Cause Exist for Relief from the Automatic Stay?

Absent a statutory exception, the filing of a bankruptcy petition, operates as a stay, applicable to all entities of the commencement or continuation, including the issuance of employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case. 11 U.S.C. §362. However, on a request of a party in interest the Court shall grant relief from the automatic stay, such as by terminating, annulling, modifying or conditioning such stay for

cause.11 U.S. C §362(d)(1). The Bankruptcy Code does not define what constitutes "cause" leaving Courts to make such determination based on the totality of the circumstances. *In re George*, 315 B.R. 624 (Bankr. S.D. Ga. 2004).

The party requesting relief from the automatic stay must first present at least a prima facie showing of "cause". 11 U.S. C. §362 (d). Once the party requesting relief has presented a prima facie showing of "cause" the burden shifts to the party opposing the motion to show that, if movant is allowed to proceed against the debtor, there will be prejudice to the debtor, to the bankruptcy estate or other creditors. *In re Cummings*, 221 B.R. 814 (Bankr. N.D. Ala. 1998) (citing 11 U.S.C.A §362(d)). In deciding whether to lift the automatic stay to allow litigation against a debtor in another forum, bankruptcy courts must balance the hardship to the Creditor against the potential prejudice to debtor, debtor's estate and other creditors. *In re Carraway Methodist Health Systems*, 355 B.R. 853 (Bankr. N.D. Ala. 2006); *In re Cummings*, 221 B.R. 814 (Bankr. N.D. Ala. 1998); *In re Marvin Johnson's Auto Serv., Inc.*, 192 B.R. 1008 (Bankr. N.D. Ala. 1996). In balancing the equities, Courts have considered the following factors: (1) trial readiness of proceeding in non-bankruptcy forum; (2) judicial economy; (3) necessity of resolving preliminary bankruptcy issues; (4) costs of defense or other potential burden to debtor or estate; (5) creditor's chances of success on the merits; (6) specialized expertise of non-bankruptcy forum; (7) whether damages or claims that could result from non-bankruptcy proceeding might be subject to equitable subordination; (8) extent to which trial of case in non-bankruptcy forum would interfere with progress of bankruptcy case; (9) anticipated impact on movant, or other non-debtors, if stay was not lifted; and (10) presence of third parties over which bankruptcy court lacks jurisdiction. *In re Cummings*, 221 B.R. 814 (Bankr. N.D. Ala. 1998); *In*

*re Carraway Methodist Health Systems*, 355 B.R. 853 (Bankr. S.D. Ala. 2006); *In re Marvin Johnson's Auto Serv., Inc.*, 192 B.R. 1008 (Bankr. N.D. Ala. 1996).

**Balancing of the Equities Analysis**

As the determination of whether cause exists to lift the stay requires consideration of the totality of the circumstances, which in this case is inextricably intertwined with balancing of the equities, this Court must evaluate the pertinent factors delineated above.

<u>Factors One and Two: Trial Readiness Of Proceeding In the Non-Bankruptcy Forum and Judicial Economy</u>

Upon an analysis of the totality of the circumstances in this case, limiting the relief sought is appropriate to balance the equities. With regard to the first factor, trial readiness, there was no pending litigation when this bankruptcy was filed. This is not a situation in which Movant expended substantial resources litigating in another forum only to have such efforts thwarted by a bankruptcy filing on the eve of trial. Hence, the lack of trial readiness supports denying relief to litigate in another forum. However, during the pendency of this bankruptcy, the Debtors and their affiliates, SRM and Grassmaster's, filed a state court declaratory judgment action against USL related to enforceability of the Franchise Agreement. Accordingly, the principles of judicial economy support limiting relief to state and federal courts in the Southern District of Alabama to allow USL to defend the pending action and litigate the matters for which relief from the automatic stay has been requested. Allowing relief from the stay to adjudicate in Florida would result in duplicitous litigation.

### Factors Three And Eight: Necessity Of Resolving Preliminary Bankruptcy Issues And The Extent To Which Trial Of Case In Non-Bankruptcy Forum Would Interfere With Progress Of Bankruptcy Case

In balancing the equities, courts also consider the necessity of resolving preliminary bankruptcy issues and the extent to which trial of the case in the non-bankruptcy forum will interfere with the progress of the bankruptcy case. Such evaluation takes into account the impact allowing the movant relief to proceed in another forum would have on the administration of the bankruptcy estate. The purpose of bankruptcy is to provide Debtors a fresh start. *In re Folendore*, 862 F. 2d 1537, 1540 (11th Cir. 1989). The objective of affording a fresh start supports construction of the Bankruptcy Code favorable to the Debtor. *In re Grogan*, 111 S. Ct 654 (1991). In this case, the outcome of the motion for relief could have a profound effect upon the bankruptcy estate and preliminary bankruptcy issues such as confirmation and plan feasibility. The Movant is seeking relief to pursue preliminary and permanent injunctive relief against the individual Debtors in Orlando, Florida to prohibit the Debtors from providing landscape maintenance in the Mobile, Alabama territory. The Debtors' income and ability to fund this Chapter 13 case is derived from the landscape maintenance work which is precisely the same work Movant seeks to enjoin the Debtors from performing. In the event that Movant succeeds in its effort, Debtors will no longer have the income from employment listed in their schedules to fund their plan. Such result would not only negatively affect the Debtors but also their other creditors. In sum, any litigation adversely affecting the Debtors' ability to earn a living, will have a detrimental impact on not only the resolution of preliminary bankruptcy issues but would also interfere with the progress of the bankruptcy case as well as the viability thereof. Therefore, the considerations involving the necessity of resolving preliminary bankruptcy issues and the extent to which trial of the case in the non-bankruptcy forum will interfere with the progress of the bankruptcy case support denying or limiting the relief sought.

9

Factor Four: Costs Of Defense Or Other Potential Burden To Debtor Or Estate

Allowing the specific relief sought by the Movant would unduly burden the Debtors. The Movant seeks to litigate in Florida under the Florida non-compete statute which has been dubbed the most "pro-business" non-compete statute in the country. Hank Jackson, *Florida's NonCompete Statute: "Reasonable" or "Truly Obnoxious?", The Florida Bar Journal,* March 2018, at 10. Rather than simply setting forth the typical elements to enforce a non-compete, such as limitations upon time, area, and line of business, and requiring a legitimate business interest justification, the Florida statute contains two additional provisions that favor the employer by: (1) preventing consideration of harm to the employee and (2) prohibiting any rule of contract construction that requires the court to construe a restrictive covenant narrowly against the constraint or the drafter of the contract. *Fla. Stat* §542.335(1)(c). Numerous courts have criticized, refused to follow or otherwise limited application of Florida's non-compete statute. *Transunion Risk and Alternative Data Solution, Inc. v. Maclachlan*, 625 Fed. Appx. 403 (11th Cir. 2015)(vacated preliminary injunction and remanded the matter to the trial court to balance the hardship); *Unisource Worldwide, Inc. v. S. Central Ala. Supply, LLC*, 199 F. Supp. 2d 1194 (M.D. Ala 2001)(held because Florida law on noncompete agreements was contrary to Alabama public policy, the choice of law provision would not stand); *Lucky Cousins Trucking, Inc. v. QC Energy Resources, Tx, LLC*, 223 F. Supp. 3d 1221 (M.D. Fla. 2016)(cited *Transunion* and refused to enter an injunction in part, because of the harm to the party against whom the injunction was sought); *Brown & Brown, Inc., v. Johnson*, 34 N.E. 3d 357 (2015)(refused to enforce Florida's non-compete statute because it was contrary to public policy and failed the "truly obnoxious test"); *Brown and Brown, Inc., v. Mudron*, 379, 887 N.E. 2d 437 (2008)(held that because Florida's non-compete statute prohibited consideration of harm to the employee, it

was contrary to public policy and would not be applied). This Court agrees with decisions criticizing the Florida non-compete statute as contrary to public policy based upon its failure to consider the harm to the party against whom the injunction is sought and its complete disregard of the fundamental tenets of contract interpretation.

In *Transunion*, the Court addressed the conflict between the language of the Florida non-compete statute excepting the hardship upon the employee from consideration and Federal Rule 65 of Civil Procedure *requiring* the party seeking the injunction to show that the threatened injury to the movant outweighs the harm the injunction may cause to the opposing party. 625 Fed. Appx. 403 (11th Cir. 2015). The 11th Circuit held that the Florida statute, precluding consideration of any individualized economic or other hardship that might be caused to the person against whom enforcement of a restrictive covenant in an employment contract is sought, does not apply under the federal rule which requires balancing the harms to determine whether a preliminary injunction is an appropriate remedy. *Id.*

This case is similar to *Transunion* because federal law requires bankruptcy courts to determine what constitutes "cause" to lift the automatic stay and in doing so take into account the hardship to debtors. The Debtors reside in Mobile, Alabama, the franchise agreement in dispute involves the Mobile West Territory and relief sought by Movant seeks to prohibit the Debtors from performing lawn maintenance services in Mobile County, Alabama. Requiring Debtors to travel over 500 miles to litigate matters related to their operations in Mobile, Alabama, where they reside, would no doubt increase the Debtors' litigation costs and place an inordinate strain on the Debtors' time and limited finances. Such additional expenses would likely render the Debtors unable to effectively participate in the litigation and fund the Chapter 13 plan.

11

Case 19-11630    Doc 100    Filed 11/21/19    Entered 11/21/19 16:43:51    Desc Main
Document    Page 11 of 18

Additionally, pursuant to *Transunion* and the line of cases criticizing, declining to follow and limiting the application of the Florida non-compete statute, consideration of the hardship to the Debtors is imperative to protect fundamental principles of justice and promote the public policy of not unjustifiably depriving a person of their livelihood.   In this particular matter, Mr. Mainous testified that the type of lawn work he is performing for his current employer, Grassmaster's, is the only type of work he has ever done. Additionally, the Debtor testified USL did not provide any accounts or assist the Franchisee in obtaining *even one customer*.  Further, the testimony presented at the hearing failed to convince this Court that USL has one or more legitimate business interests justifying the restrictive covenant in this case.  Hence, upon considering the totality of the circumstances and balancing the equities, this Court believes granting relief to allow litigation outside of the Southern District of Alabama would be unduly burdensome upon the Debtors.

<u>Factor Five: Creditor's Chances Of Success On The Merits</u>

In light of the limited scope of the Motion for Relief hearing, this Court does not purport to definitively opine as to the Movant's chances of success on the merits in another forum. Nonetheless, in considering this factor for the limited purpose of balancing of the equities, this Court has reservations, in addition to those above, regarding the enforceability of the non-compete against the Debtors.  For instance, the Debtors contest the applicability of the non-compete based upon the language in paragraph 10D of the Agreement providing that upon an assignment, Debtors would execute a covenant not to compete for 2 years from the date of the assignment.  Accordingly, Debtor's contend that since the individual Debtors assigned the Agreement on April 27, 2015, Debtors would no longer be subject to a non-compete. Additionally, the Debtors have argued and offered testimony related to breach of the

Franchisor's duties under the Agreement. Such arguments or others espoused by the Debtors may prove successful in their pending state court litigation; however, recognizing the purview of the Motion for Relief analysis, this Court considers this factor neutral.

### Factors Six and Seven: Specialized Expertise Of Non-Bankruptcy Forum And Whether Damages Or Claims That Could Result From Non-Bankruptcy Proceeding Might Be Subject To Equitable Subordination

Based upon the facts of this case and the issue in controversy, this Court does not find the factors concerning specialized expertise of non-bankruptcy forum and whether damages or claims that may result from non-bankruptcy proceeding may be subject to equitable subordination of sufficient applicability to warrant discussion herein.

### Factor Nine: Anticipated Impact On Movant, Or Other Non-Debtors, If Stay Not Lifted

In consideration of the impact denying relief from the automatic stay would have on the Movant, allowing limited relief to proceed in state or federal court in the Southern District of Alabama is appropriate. In analysis of the prescribed factors, most of the relevant considerations weigh in favor of the Debtors. Movant is seeking to prohibit the Debtors from performing lawn maintenance for customers that according to the unrefuted testimony, the Debtors personally sacrificed and worked hard to obtain without the assistance of USL. There is no assertion that Franchisor provided, supplied, cultivated or had prior relationships with any of the customers that the Debtor is servicing and which USL now seeks to enjoin the Debtor from working for. The evidence presented established denying relief to USL would, in essence, place it in the same position it was in at the time that the Franchise Agreement was executed with the Debtors in regard to its customer lists and strategic accounts. Specifically, USL had no accounts in the Mobile Territory when it executed the Franchise Agreement with the Debtors and it did not transfer or provide any accounts to the Franchisee. Nonetheless, USL received franchise fees,

13

Case 19-11630    Doc 100    Filed 11/21/19    Entered 11/21/19 16:43:51    Desc Main
Document      Page 13 of 18

royalties and marketing expenses even though it provided little to no substantive assistance to the Debtors and admittedly no advertisements in the Mobile Territory. Yet it seems USL seeks a windfall of sorts, to pursue injunctive relief against the Debtors and their present employer to reap the benefits of the Debtors' individual efforts, obtain their existing customers and market and sell those customers to another franchisee. However, to deny relief entirely would deprive the Movant of the ability to fully respond in the pending state court action involving the same issue for which Movant has sought relief. Granting limited relief from stay for the Movant to proceed in state and federal courts in the Southern District of Alabama, will allow Movant to defend the pending state court action and file affirmative defenses or counter-claims as it may deem appropriate to address the equitable claims requested in a court of competent jurisdiction.

<u>Factor Ten: Presence Of Third Parties Over Which Bankruptcy Court Lacks Jurisdiction.</u>

The final factor to be considered, is the presence of third parties over which the bankruptcy court lacks jurisdiction. "[F]or federal bankruptcy jurisdiction to exist, a case must at a minimum 'relate to' a case under title 11." *Community Bank of Homestead v. Boone (In re Boone),* 52 F.3d 958, 960 (11th Cir.1995). Pursuant to 28 U.S.C. § 157(c), a bankruptcy judge may hear a non-core proceeding that is "related to" a title 11 case. Such a proceeding is "related to" a case filed under title 11 if it "could conceivably have an effect on the estate being administered in bankruptcy...." *Id.* (quoting *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.),* 910 F.2d 784, 788 (11th Cir.1990). Further, in light of the Supreme Court's decision in *Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), bankruptcy courts are required to determine whether they have constitutional authority to enter a final order in matters brought before them. In <u>Stern</u>, which involved a core proceeding brought by the debtor under 28 U.S.C. § 157(b)(2)(C), the Supreme Court held that a bankruptcy court "lacked the constitutional

14

authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." 564 U.S. at 503, 131 S.Ct. 2594. In light of the forgoing, this Court recognizes its limited jurisdiction and the relevance thereof to the decision of whether stay relief if appropriate.

This Court lacks jurisdiction over all the parties involved in the dispute concerning the efficacy of the Franchise Agreement and the non-compete provisions. The interested parties in the litigation concerning enforceability of the Agreement and the non-compete provisions include not only USL and Steve Mainous, RaeAnne Mainous but also non-debtor, third parties, SRM and Grassmaster's. Movant's motion sought relief as to SRM and Grassmaster's as well as the individual Debtors. The Debtors conceded at the setting that the automatic stay is not applicable to SRM or Grassmaster's. The non-debtor entities are named Plaintiffs in the pending state court litigation against USL based upon the same issue that the Movant seeks to litigate. Therefore, in the interest of fairness and judicial economy as well as this Court's jurisdictional constraints, USL should be granted limited relief to adjudicate the equitable issues related to the enforceability of the Franchise Agreement and the non-compete provisions as to the individual Debtors in state and federal courts in the Southern District of Alabama.

## Issue II: Allowance of Proof of Claim

The applicable provisions of Bankruptcy Code govern allowance of claims and interest and provides in pertinent part:

> **(a)** A **claim** or interest, proof of which is filed under section 501 of this title, is deemed **allowed**, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.
>
> **(b)** Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a **claim** is made, the court, after notice and a hearing, shall

15

Case 19-11630    Doc 100    Filed 11/21/19    Entered 11/21/19 16:43:51    Desc Main
Document     Page 15 of 18

> determine the amount of such **claim** in lawful currency of the United States as of the date of the filing of the petition, and shall **allow** such **claim** in such amount, except to the extent that--
> **(1)** such **claim** is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such **claim** is contingent or unmatured; . . .
> **(c)** There shall be estimated for purpose of **allowance** under this section--
> **(1)** any contingent or **unliquidated claim**, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or
> **(2)** any right to payment arising from a right to an equitable remedy for breach of performance.

11 U.S.C. §502.

In this case, the portion of USL's ECF Claim 9 remaining in dispute arises from royalties, marketing fees, penalties and interest claimed due from the Debtors based upon the Franchise Agreement. The Debtors have disputed the validity and applicability of the Agreement and the charges based upon various theories included in their Objection to Claim. Additionally, the testimony of USL established that portions of the amounts claimed are in fact only estimates. Since, as noted hereinabove, litigation is pending to determine the enforceability of the Agreement, it is appropriate to consider ECF Claim 9, as an estimated claim to not unduly delay the administration of the case and allow the Chapter 13 to calculate the Debtors' plan payments and proceed with confirmation in due course. However, to balance the hardship to the Debtors in having an estimated claim included in their case prior to resolution of the dispositive issues between the parties, the amount of the estimated claim shall not include the sums which USL admitted were based upon speculation as to the Franchisee's gross receipts. The allowed estimated claim may be further challenged or amended, as appropriate upon the disposition of the litigation between the parties.

## **CONCLUSION**

In accordance with the forgoing, in light of the totality of the circumstances and in balancing of the equities between the parties, this Court finds that good and reasonable cause exists for the entry of this Order and hereby DECLARES that the automatic stay of 11 U.S.C. §362 is not applicable to SRM Landscape Maintenance, LLC and Grassmaster's Landscape Management, LLC and USL's Motion for Relief as to the Debtors, Steven L. and RaeAnne E. Mainous, is CONDITIONALLY GRANTED, limiting the relief sought to proceedings in state or federal courts in the Southern District of Alabama. Further, at this time the Debtors' Objection to Claim 10 of USL is OVERRULED and Claim 10 is ALLOWED and the Debtors' Objection to Claim 9 is OVERRULED IN PART and ALLOWED as an unsecured estimated claim in the amount of $27,770.06. This Court's rulings on the Objections to Claims are without prejudice pending the outcome of litigation between the parties in another forum.

Dated: November 21, 2019

JERRY C. OLDSHUE, JR.
U.S. BANKRUPTCY JUDGE

18